


**FILED**

JAN − 2 2008

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MICHAEL BLUMENTHAL,

      Plaintiff,

v.

-------------------------------------

LUCIEN DANIEL WENCEL,

      Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

JAN 02 2008

**08cv0026
JUDGE MORAN
MAG.JUDGE ASHMAN**

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF SAID COURT:

      COMES NOW Lucien Daniel Wencel, defendant in the above cause, by and through his attorney, Charles J. Holley, and files this Notice of Removal of said cause from a State Court to this Court and as for such notice would show the Court as follows:

1.    This is a pending civil action brought by Plaintiff against Defendant petitioner in the Circuit Court of Cook County, Illinois, of which the United State Courts have original jurisdiction.

2.    This suit involves a controversy between citizens of different states in that at all times pertinent hereto, plaintiff is and has been a citizen and resident of the State of Illinois and defendant is and has been a citizen and resident of the State of California.

3.    The amount of the matter in controversy, as pled by the plaintiff, does not exceed $75,000.00 exclusive of interest and costs. Defendant believes, however, plaintiff has pled an amount only sufficient to establish jurisdiction in the Law Division of the Circuit Court of Cook County, not the actual damages plaintiff intends to seek going forward. In the alternative, defendant believes plaintiff purposely pled an amount below the threshold necessary for federal court jurisdiction, in an effort to avoid removal of this matter. There exists a reasonable probability that more that $75,000 is in controversy.

4.    This notice is filed within thirty (30) days after the date of service of process of the amended complaint upon the defendant herein as required by statute and defendant has not filed any pleadings, subsequent to the amended complaint, in this cause in the Circuit Court prior to filing this notice of removal.

5.    Copies of all pleadings and papers served upon defendant in this action are filed with this notice.

6.    Immediately upon the filing of this notice of removal, written notice of such filing is being given by defendant to plaintiff as required by law, and a copy of this petition is simultaneously being filed with the Clerk of the Circuit Court of Cook County, where this case was originally filed.

WHEREFORE, plaintiff is hereby notified that said action is removed from the Circuit Court of Cook County to this Court.

Respectfully Submitted,

Charles J. Holley
Law Offices of Charles J. Holley, P.C.
161 North Clark Street
Suite 4700
Chicago, Illinois   60601
(312) 960-0770

## CERTIFICATE OF SERVICE

I hereby certify that have caused to be served via hand delivery, a true and correct copy of the above and foregoing Notice of Removal upon the following individuals this 2nd day of January, 2008.

David Harley, Esq.

77 West Washington Street, Suite 1720

Chicago, Illinois 60602

Charles J. Holley

**FIRM I.D.# 01292**

G:\WPF\MIKELB\WENCLSPS.WPD

STATE OF ILLINOIS     )
                      ) SS:
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

```
                                              )
MICHAEL L. BLUMENTHAL, an individual,         )
                                              )
              Plaintiff,                       )
                                              )
v.                                            )    No.   07 L 006543
                                              )
LUCIAN DANIEL WENCEL, an individual           )
                                              )
              Defendant.                       )
                                              )
                                              )
```

## AFFIDAVIT OF FILING AND PROOF OF SERVICE

TO:    Charles J. Holley, Esq.
       Law Offices of Charles J. Holley P.C.
       161 North Clark #4700
       Chicago, IL  60601

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that she served the foregoing documents, to-wit: **PLAINTIFF'S AMENDED COMPLAINT** by placing true and correct copies thereof in an envelope properly sealed and addressed to the person named above with proper first-class prepaid postage affixed thereon and depositing said envelope in the United States Postal Service Mail Chute located at 77 West Washington Street, Chicago, Illinois  60602 on the 3RD day of December, 2007 at the hour of 5:00 P.M.

_____

**SUBSCRIBED and SWORN**
to before me this 3rd day
of December, 2007.

_____
**Notary Public**

> "OFFICIAL SEAL"
> CHRISTINE A. MURO
> NOTARY PUBLIC, STATE OF ILLINOIS
> My Commission Expires 04/28/10

**DAVID A. HARLEY, ESQ.**
**ATTORNEY FOR PLAINTIFF**
**77 WEST WASHINGTON STREET - SUITE 1720**
**CHICAGO, ILLINOIS  60602**
**(312) 372-3566**

FIRM I.D.#01292

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MICHAEL L. BLUMENTHAL, an            )
individual,                          )
                                     )
                Plaintiff,           )        No. 07 L 6543
v.                                   )
                                     )
LUCIAN DANIEL WENCEL, an individual )
                                     )
                Defendant.           )
                                     )

FILED-14
2007 DEC -3 PM 4:23
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

### AMENDED COMPLAINT AT LAW

**NOW COMES** Michael L. Blumenthal ("Plaintiff"), by and through his attorney, David

A. Harley, and against Lucian Daniel Wencel ("Defendant") and for his claim of defamation

against Defendant states as follows:

### Count I – Defamation Per Se

1.      This is a defamation action brought on behalf of Plaintiff and against the

Defendant to remedy and recover damages sustained as a result of false and unprivileged

statements made by the Defendant.

2.      The Plaintiff is an attorney licensed to practice in Illinois, and former owner of a

Caboodle Cartridge franchise in the Chicago's Loop area.

3.      Defendant is President and majority shareholder of Caboodle Licensing

Corporation and resides in Los Gatos, California.

4.      In late April and May of 2007, a group comprised of the majority of Caboodle's

franchisees formed the "Unity Team" (i.e., a franchisee association comprised exclusively of Caboodle franchisees) to address issues that were inhibiting or prohibiting the majority of franchisees from being successful.  Among the chief problems facing the franchisees were Caboodle Licensing Corporation's (herein "Caboodle Corporate") constantly changing mandates, lack of responsiveness to franchisee concerns and its open hostility towards many franchisees.

5.      The Unity Team elected three representatives to discuss these problems with Defendant Wencel, Mr. Blumenthal was selected as one of the representatives.

6.      In mid-May 2007, at Defendant's request,  Plaintiff contacted the Defendant to arrange for a face to face meeting to discuss ways to help Caboodle.

7.      The Plaintiff informed the Defendant that he had amassed a large amount of data from the franchisees to discuss with Caboodle Corporate and that he may  be bringing associates with him to that meeting, and that the purpose of that meeting was to discuss the problems plaguing franchisees and offer solutions to those problems.

8.      The Defendant agreed to meet with the Plaintiff and his associates over the course of two days, specifically,  May 31, 2007 and June 1, 2007.

9.      The Plaintiff specifically suggested that the Defendant make two days available because of the breadth of topics requiring discussion and defendant's anticipated reaction to these topics.

10.      The Plaintiff, his associates, Dr. James Gariti and Mr. Peter Bower, the Defendant, and Marc Jacobs (a Caboodle Corporation employee) met on May 31, 2007 and June 1, 2007

2

and discussed the issues the Unity Team had decided were among the most important issues affecting all franchisees.

11.    The Defendant's attacks on the Plaintiff's character, honesty, business acumen began almost immediately.  Subsequent to these meetings, the Defendant attacked the Plaintiff via e-mail, accusing the Plaintiff of *inter alia*:

A.    Surprising him by showing up with other franchisees.

B.    Not discussing the alleged "sole" issue Defendant has agreed to discuss.

C.    Ignoring one of the Defendant's employees by continuing to take photos of Defendant's store after being asked to stop.

D.    Organizing "a virtual attack" on Caboodle Corporate through e-mail and the Unity Team.

E.    Running a "Caboodle store [that] is a disaster," despite knowing that the Plaintiff is intentionally not seeking customers because of past and current problems with product received from Caboodle Corporate.  Defendant made these statements knowing that the Plaintiff had been plagued with family and employee health issues since May of 2006.

F.    Organizing the Unity Team to further Plaintiff's goals of a hostile takeover.

G.    Not even knowing vendor names and other acts of gross incompetence. Defendant made this statement shortly after receiving a written list from the Plaintiff of vendor names and contact information.

3

H. "[S]pen[ding] most of the (sic) time with Caboodle fighting with his partner/store manager Bill Stout."

I. Lying to the Defendant.

J. Having poorly designed or manufactured marketing material. The Defendant stated that he had seen the Plaintiff's marketing materials and that they were "not good." This statement was made by the Defendant who was fully aware that the Plaintiff was using the marketing materials disseminated by the Defendant.

K. Having threatened meritless legal action based on Plaintiff's misrepresentations of the Defendant. Specifically, the Defendant accused Plaintiff of sending letters threatening legal action that contained, "spins and misrepresentations portraying me (defendant) as a 'boogey man' bent on hurting others;"

L. Had threatened to sue Caboodle, when in fact the Plaintiff had threatened to sue only the Defendant, and only if he did not issue a statement correcting or withdrawing his defamatory statements.

Each of the foregoing assertions by the Defendant were, and remain, false.

12. On May 29, 2007, in an e-mail to Mr. Blumenthal, the Defendant wrote regarding the upcoming two (2) day meeting:

> I hope to discuss the issues that you are bringing (you were not too specific on these) and also to discuss the future plans for the Chicago Loop project (your store)...You have expressed that you spoke to a number of stores and want to tell me their about (sic)

4

concerns.

13.    Plaintiff immediately responded to that statement via email, which read, in

pertinent part:

> ...I hope you will keep an open mind and consider carefully the
> information I or others may bring up for discussion with you. We
> are all on the same team and we all want the same thing...."

14.    The foregoing statement shows that the Defendant knew prior to the meeting

that Plaintiff was coming to discuss issues other than his store and that he was not coming

alone.  Also during the Plaintiff's phone calls to set up and confirm these meeting, Plaintiff

mentioned that he would be bringing others with him to the meeting to discuss "the issues."

15.    Nevertheless, the Defendant wrote in a June 3, 2007, e-mail that was sent to the

Plaintiff and others that:

> The subject of Mr. Mike Blumenthal (sic) franchise in the Chicago
> loop was not discussed although this was the item on the agenda
> when Mike told Daniel that he would come for a one on one visit.

16.    On June 12, 2007, Defendant repeated his false utterance regarding the

scheduling and purpose of the meeting when he sent a mass e-mail to every Caboodle

franchisee which stated:

> I met with you and two other gentleman at our Santa Clara office.
> Although it was totally unscheduled and under false pretenses,
> (sic) I decided to spend full (sic) 15 hours on talking about the
> issues.

17.    Other misrepresentations of fact include statements suggesting that Mr.

Blumenthal agreed to, "search for a marketing professional or agency to hire.  The Unity Team

will be responsible for hiring, negotiating the payments and securing monies for such hire."

5

18.     At no time did the Plaintiff or either of the other Unity Team representatives offer to hire and pay for marketing professionals on behalf of the Unity Team.

19.     The Defendant on June 11, 2007 wrote to a third party:

> We are facing a difficult time. The company seems to be under a virtual attack by Mike Blumenthal. He has no experience running this business and his Caboodle store is a disaster. He has organized a group that seems to be manipulated by him to serve his goals with (sic) I suspect is a hostile takeover. Mike has lied to me, then send (sic) insulting and derogatory mail and acted in a most arrogant and aggressive way. Do you believe that Mike cares about the vendors or even knows their names. His average monthly sales are under thousand dollars and he spent most of the (sic) time with Caboodle fighting with his partner/store manager Bill Stout. Did you ever see the marketing materials that he produced? Id (sic) did. Believe me it (sic) was not good... I also believe that somebody is trying, through intimidation, fear and artificial crisis making, (sic) take over the company. As a new person in the chain you might have harder time than others to judge (sic) who is trying to do good in here and who is not. I took my time to write to you this letter because I sense that Mike has manipulated you along with others. He orchestrated today (sic) email (sic) action.

20.     As stated above, the false statements regarding the Plaintiff include:

A.      That the Plaintiff's store is a disaster.  Defendant has

been made repeatedly aware of the fact that Plaintiff

is not actively selling.  In fact, on June 13, 2007, after

uttering the defamatory statements regarding

Plaintiff's store performance, Defendant sent the

Plaintiff another e-mail asking him when he planned,

"to start the operation," referring to Plaintiff's store.

B.      That the Plaintiff is attempting a hostile takeover of

6

Caboodle, via "intimidation, fear and artificial crisis making." The Plaintiff has never tried to force the Defendant out of the company, nor has he ever advanced any position not approved by the Unity Team. The Unity Team has never taken a position to engage in a takeover of Caboodle Corporate, but rather to change the rules imposed on them by Caboodle Corporate so that they may be more successful.

C.    That Plaintiff lied to the Defendant. Other than the statements addressed in this Complaint, the Plaintiff is unaware of what "lies" the Defendant is referring to. Given the location of this statement, surrounded by other "facts," this statement by the Defendant could reasonably be construed to be a statement of fact, not opinion.

D.    Plaintiff does not care about the vendors or know who they are. On May 31, 2007, the Plaintiff provided the Defendant with a letter requesting the addition of twelve vendors to the Caboodle Corporate's approved vendor list. That list provided names,

7

addresses and phone numbers, so clearly the Plaintiff knows and cares about who the vendors are. In fact, the Plaintiff's concern over the vendors is one of the reasons he delayed opening his store.

E.    That Plaintiff has spent most of his time with Caboodle fighting with his store manager/partner Bill Stout. While the Plaintiff employed Bill Stout for a period of time, Bill Stout quit in mid-2006, and since that time the Plaintiff has spoken to Mr. Stout only on rare occasions. On those few occasions the conversations have always been cordial. The Plaintiff has in fact repeatedly informed Caboodle Corporate that Bill Stout no longer works for the Plaintiff and asked that his name be removed from all correspondence with Caboodle Corporate. Caboodle Corporate failed to comply with even these simple requests.

F.    That the Plaintiff created marketing materials that were not good. The only marketing materials made by the Plaintiff were either based on Caboodle Corporate templates, or were later adopted by

8

Caboodle Corporate as examples for other franchisees

to use.

G.    That the Plaintiff has manipulated franchisees to

attack Caboodle Corporate.  The Plaintiff has

repeatedly explained to the Defendant the genesis of

the Unity Team and his role as an elected

representative of the Unity Team.  The Plaintiff has

never taken unilateral action or acted without the

prior consent of the Unity Team.  The Plaintiff has no

control over the Unity Team and has never

orchestrated an "email action."

21.    On June 15, 2007, during a conference call open to all Caboodle franchisees, the

Defendant repeated his false statements regarding the Plaintiff including *inter alia*:

A.    That the Plaintiff's store is an "utter failure" and the worst in the chain.

B.    That the Plaintiff and his fellow Unity Team elected representatives failed

to explain the dire financial straits many Caboodle franchisees are in, were

unprofessional and unprepared for their meeting with the Defendant, and

are "terrible messengers."

C.    That the Plaintiff and one of his attorneys threatened to sue Caboodle and

had accused the Defendant of destroying evidence.

D.    That the Plaintiff was twisting the Defendant's words.

9

22.     The Defendant's statements are defamatory *per se* because they suggest that the Plaintiff is dishonest with business associates by *inter alia*:

    A.    Calling meetings under false pretenses.

    B.    Misrepresenting his authority to speak on behalf of other business associates.

    C.    Agreeing to hire advertising professionals, when the Defendant knew that the Plaintiff was not authorized to make such a commitment, and did not make such a commitment.

    D.    Conducting himself in a manner inconsistent with his responsibilities to the Unity Team (manipulating the group for the purpose of a hostile takeover).

    E.    Being unable to successfully operate a Caboodle store, all the while knowing full well that the Plaintiffs sales were intentionally kept low and the reasons for those actions (i.e., Plaintiff's unwillingness to harm his reputation in the Chicago business community by selling the Defendant's substandard products as well as serious family issues to name but two reasons).

23.     Prior to filing this lawsuit, the Plaintiff requested directly and through an attorney that the Defendant publish a retraction.

24.     The Plaintiff pointed the Defendant to his own e-mails showing that he knew that his assertions were demonstrably false.

10

25.    The Defendant has declined this opportunity to correct his defamatory misstatements.

26.    The Defendant's statements defame the Plaintiff in that they were designed to prejudice others, against the Plaintiff, by suggesting the existence of facts showing that the Plaintiff:

A.    Was and is dishonest in his business dealings with the Defendant and the Unity Team.

B.    Lacked the ability to perform his responsibilities as one of the three elected representatives of the Unity Team

C.    The Plaintiff lacked the ability to act as a ethical leader.

27.    As a proximate result of the foregoing unprivileged defamatory statements by the Defendant; statements which go beyond mere opinion by suggesting facts were available to support the Defendant's assertions; the Plaintiff has suffered injuries, including injuries to his reputation as an ethical businessman and member of the bar.

28.    Furthermore, given the nature of the defamatory publication, Plaintiff has suffered humiliation in front of his colleagues, and the rest of the community, which has social, political, and financial ramifications for him.  The foregoing false and defamatory statements were made by Defendant with knowledge of their falsity, with the intent to cause the Unity Team and withdraw its support of Plaintiff and to breakup the Unity Team through distrust of its leaders.  The Defendant did these things with actual malice, so as to justify an award of punitive damages.

11

WHEREFORE, the Plaintiff, MICHAEL L. BLUMENTHAL,  prays for judgment against the Defendant, LUCIAN DANIEL WENCEL, and for damages in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, and for exemplary and punitive damages in an amount which will serve to punish the Defendant and deter him from similar conduct, plus costs and such other and further relief as this Honorable  Court deems fair, equitable and just.

Respectfully submitted,

MICHAEL L. BLUMENTHAL, Plaintiff

By:  _____
His Attorney

DAVID A. HARLEY, ESQ.
ATTORNEY FOR PLAINTIFF
77 WEST WASHINGTON, #1720
CHICAGO, IL 60602
(312)372-3566
ATTORNEY NO. 6244536

12

## CONTESTED MOTION BRIEFING SCHEDULE ORDER-MOTION CALL "E"    #11

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

Blumenthal )
)
)
**Plaintiff(s)** )
)
-v- )    NO: 07 L 6543
)
Wencel )
)
)
**Defendant(s)** )

J.C.

### ORDER

This cause coming on for entry of a briefing schedule on the Motion of
_Defendant_____, __X__ 2-615 Dismissal, _____ 2-619 Dismissal,
_____ Rule 103(b) Dismissal, _____ In Camera Inspection, _____ 2-1005 Summary
Judgment, or _____ Other Motion (_____),

### IT IS HEREBY ORDERED AS FOLLOWS:

(4231)    1. The Response of ~~Plaintiff~~ _____ is due on _____;
(4231)    2. The Reply of ~~Defendant~~ _____ is due on _____;
(4217)    3. The matter is set for STATUS at 11:00 A.M. _____
(6271)    4. All courtesy copies, briefs, pleadings, full transcripts of depositions, and
(6280)    exhibits will be submitted on the STATUS date only, and will be in
(6285)    compliance with the applicable Motion Judges' Rules;
          5. Materials submitted after a ruling date is scheduled will not be accepted
          nor considered in the ruling;
          6. Other: _Plaintiff is granted leave to file an amended complaint by_
          _12/3/07. Defendant is to answer by 12/31/07_ 4.2A

(4619)    7. The matter is set for case management on _1/7/08_ at ~~11:00~~ 9:30 A.M.

### **MOTIONS WITH INCOMPLETE COURTESY COPIES WILL BE DENIED**

Atty No: 01292
Atty Name: MM Blumenthal
Atty For: Plaintiff
Address: 77 West Washington #1720
City: Chicago IL 6062
Telephone: 312-372-3566

ENTER:

NOV 26 2007

JUDGE _____ NO. _____