**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL L. BLUMENTHAL, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No.   08 C 0026** |
| **v.** | ) | |
| | ) | **Judge Moran** |
| **LUCIAN DANIEL WENCEL, an individual,** | ) | |
| | ) | **Magistrate Judge Ashman** |
| **Defendant.** | ) | |

<u>**DECLARATION OF MARTIN A. BLUMENTHAL**</u>

Pursuant to 28 U.S.C. § 1746, the undersigned MARTIN A. BLUMENTHAL declares:

1.      My name is MARTIN A. BLUMENTHAL. I am an attorney representing Plaintiff in this action. I am admitted to practice before this Court. I make this declaration in support of: PLAINTIFF'S MOTION TO REMAND.

2.      A true and correct copy of each of the following accompanies this declaration:

**Exh.**    **Document**

A.      Plaintiff's Complaint at Law filed June 25, 2007

B.      Proof of Service of Special Process Service filed October 23, 2007

C.      Plaintiff's Amended Complaint at Law filed December 3, 2007


Executed: January 14, 2008          s/MARTIN A. BLUMENTHAL

                                   **MARTIN A. BLUMENTHAL, ESQ.**
                                   **ATTORNEY FOR PLAINTIFF**
                                   **1 NORTHFIELD PLAZA - SUITE 300**
                                   **NORTHFIELD, IL   60093**
                                   **(847) 441-2687**
                                   **ATTORNEY I.D.# 6180069**

FIRM I.D.#01292

G:\WPF\MIKELB\WENCLCMP

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

|  |  |
|---|---|
| MICHAEL L. BLUMENTHAL, an individual, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| LUCIAN DANIEL WENCEL, an individual | ) ) |
| Defendant. | ) ) ) |

2007L006543
CALENDAR/ROOM E
TIME 00:00
Libel/Slander

No.

**Plaintiff Demands Trial By Jury.**

### COMPLAINT AT LAW

**NOW COMES** Michael L. Blumenthal ("Plaintiff"), by and through his attorney, David

A. Harley, and against Lucian Daniel Wencel ("Defendant") and for his claim of defamation

against Defendant states as follows:

### Count I – Defamation Per Se

1.      This is a defamation action brought on behalf of Plaintiff and against the

Defendant to remedy and recover damages sustained as a result of false and unprivileged

statements made by the Defendant.

2.      The Plaintiff is an attorney licensed to practice in Illinois, and owner of a

Caboodle Cartridge franchise in the  Chicago's Loop area.

3.      Defendant is President and majority shareholder of Caboodle Licensing

Corporation and resides in Los Gatos, California.

4.      In late April and May of 2007, a group comprised of the majority of Caboodle's



franchisees formed the "Unity Team" (i.e., a franchisee association comprised exclusively of Caboodle franchisees) to address issues that were inhibiting or prohibiting the majority of franchisees from being successful.  Among the chief problems facing the franchisees were Caboodle Licensing Corporation's (herein "Caboodle Corporate") constantly changing mandates, lack of responsiveness to franchisee concerns and its open hostility towards many franchisees.

5.    The Unity Team elected three representatives to discuss these problems with Defendant Wencel, Mr. Blumenthal was selected as one of the representatives.

6.    In mid-May 2007, at defendant's request,  Plaintiff contacted the Defendant to arrange for a face to face meeting to discuss ways to help Caboodle.  The Plaintiff informed the Defendant that he had amassed a large amount of data from the franchisees to discuss with Caboodle Corporate and that he may  be bringing associates with him to that meeting, and that the purpose of that meeting was to discuss the problems plaguing franchisees and offer solutions to those problems.  The Defendant agreed to meet with the Plaintiff and his associates over the course of two days, specifically,  May 31, 2007 and June 1, 2007.  The Plaintiff specifically suggested that the Defendant make two days available because of the breadth of topics requiring discussion and defendant's anticipated reaction to these topics.

7.    The Plaintiff, his associates, Dr. James Gariti and Mr. Peter Bower, the Defendant, and Marc Jacobs ( a Caboodle Corporation employee)  met on May 31, 2007 and June 1, 2007 and discussed the issues the Unity Team had decided were among the most important issues affecting all franchisees.  Defendant's attacks began almost immediately. Subsequent to these

2

meetings, the Defendant attacked the Plaintiff via e-mail, accusing the Plaintiff of *inter alia*: surprising him by showing up with other franchisees; not discussing the alleged "sole" issue Defendant has agreed to discuss; ignoring one of the Defendant's employees by continuing to take photos of Defendant's store after being asked to stop; organizing "a virtual attack" on Caboodle Corporate through email and the Unity Team; running a "Caboodle store [that] is a disaster," despite knowing that the Plaintiff is intentionally not seeking customers because of past and current problems with product received from Caboodle Corporate, (as well as personal family and employee health issues which have plagued Plaintiff since May of 2006, which information has been well known to defendant); organizing the Unity Team to further Plaintiff's goals of a hostile takeover; that Plaintiff does not even know vendor names and other acts of gross incompetence, despite Plaintiff having previously providing Defendant with a written list of vendor names and contact information; "spen[ding] most of the (sic) time with Caboodle fighting with his partner/store manager Bill Stout;" having lied to Defendant; that the Defendant has seen the Plaintiff's marketing materials and that they were "not good," even though the Plaintiff was using the marketing materials disseminated by the Defendant; defendant accused plaintiff of sending letters threatening legal action that contained, "spins and misrepresentations portraying me (defendant) as a 'boogey man' bent on hurting others;" and that Plaintiff had threatened to sue Caboodle, when in fact the Plaintiff had threatened to sue only the Defendant and only if he did not issue a statement correcting or withdrawing his defamatory statements.   Each of the foregoing assertions by the Defendant were, and remain, false.

3

8.      On May 29, 2007, in an e-mail to Mr. Blumenthal, the Defendant wrote regarding the upcoming two (2) day meeting:

> I hope to discuss the issues that you are bringing (you were not too specific on these) and also to discuss the future plans for the Chicago Loop project (your store)...You have expressed that you spoke to a number of stores and want to tell me their about (sic) concerns.

Plaintiff immediately responded to that statement via email, which read, in pertinent part:

> ...I hope you will keep an open mind and consider carefully the information I or others may bring up for discussion with you. We are all on the same team and we all want the same thing...."

9.      The foregoing statement shows that the Defendant knew prior to the meeting that Plaintiff was coming to discuss issues other than his store and that he was not coming alone.  Also during the Plaintiff's phone calls to set up and confirm these meeting, Plaintiff mentioned that he would be bringing others with him to the meeting to discuss "the issues."

10.     Nevertheless, the Defendant wrote in a June 3, 2007, e-mail that was sent to the Plaintiff and others that:

> The subject of Mr. Mike Blumenthal (sic) franchise in the Chicago loop was not discussed although this was the item on the agenda when Mike told Daniel that he would come for a one on one visit.

11.     On June 12, 2007, Defendant repeated his false utterance regarding the scheduling and purpose of the meeting when he sent a mass e-mail to every Caboodle franchisee which stated:

> I met with you and two other gentleman at our Santa Clara office. Although it was totally unscheduled and under false pretenses, (sic) I decided to spend full (sic) 15 hours on talking about the issues.

4

12.     Other misrepresentations of fact include statements suggesting that Mr.

Blumenthal agreed to, "search for a marketing professional or agency to hire.  The Unity Team

will be responsible for hiring, negotiating the payments and securing monies for such hire."

13.     At no time did the Plaintiff or either of his representatives offer to hire and pay

for marketing professionals on behalf of the Unity Team.

14.     The Defendant on June 11, 2007 wrote to a third party:

> We are facing a difficult time. The company seems to be under a virtual
> attack by Mike Blumenthal. He has no experience running this business
> and his Caboodle store is a disaster. He has organized a group that seems
> to be manipulated by him to serve his goals with (sic) I suspect is a hostile
> takeover. Mike has lied to me, then send (sic) insulting and derogatory
> mail and acted in a most arrogant and aggressive way. Do you believe
> that Mike cares about the vendors or even knows their names. His
> average monthly sales are under thousand dollars and he spent most of
> the (sic) time with Caboodle fighting with his partner/store manager Bill
> Stout. Did you ever see the marketing materials that he produced? Id (sic)
> did. Believe me it (sic) was not good... I also believe that somebody is
> trying, through intimidation, fear and artificial crisis making, (sic) take
> over the company. As a new person in the chain you might have harder
> time than others to judge (sic) who is trying to do good in here and who is
> not. I took my time to write to you this letter because I sense that Mike has
> manipulated you along with others. He orchestrated today (sic) email (sic)
> action.

15.     As stated above, the false statements regarding the Plaintiff include:

A.     That the Plaintiff's store is a disaster.  Defendant has

been made repeatedly aware of the fact that Plaintiff

is not actively selling.  In fact, on June 13, 2007, after

uttering the defamatory statements regarding

Plaintiff's store performance, Defendant sent the

5

Plaintiff another e-mail asking him when he planned, "to start the operation," referring to Plaintiff's store.

B.    That the Plaintiff is attempting a hostile takeover of Caboodle, via "intimidation, fear and artificial crisis making." The Plaintiff has never tried to force the Defendant out of the company, nor has he ever advanced any position not approved by the Unity Team. The Unity Team has never taken a position to engage in a takeover of Caboodle Corporate, but rather to change the rules imposed on them by Caboodle Corporate so that they may be more successful.

C.    That Plaintiff lied to the Defendant. Other than the statements addressed in this Complaint, the Plaintiff is unaware of what "lies" the Defendant is referring to. Given the location of this statement, surrounded by other "facts," this statement by the Defendant could reasonably be construed to be a statement of fact, not opinion.

D.    Plaintiff does not care about the vendors or know who they are. On May 31, 2007, the Plaintiff provided

6

the Defendant with a letter requesting the addition of twelve vendors to the Caboodle Corporate's approved vendor list.  That list provided names, addresses and phone numbers, so clearly the Plaintiff knows and cares about who the vendors are.  In fact, the Plaintiff's concern over the vendors is one of the reasons he has delayed opening his store.

E.    That Plaintiff has spent most of his time with Caboodle fighting with his store manager/partner Bill Stout.  While the Plaintiff employed Bill Stout for a period of time, Bill Stout quit in mid-2006, and since that time the Plaintiff has spoken to Mr. Stout only on rare occasions. On those few occasions the conversations have always been cordial.  The Plaintiff has in fact repeatedly informed Caboodle Corporate that Bill Stout no longer works for the Plaintiff and asked that his name be removed from all correspondence with Caboodle Corporate, but even these simple requests have not been complied with.

F.    That the Plaintiff created marketing materials that were not good.  The only marketing materials made

by the Plaintiff were either based on Caboodle

Corporate templates, or were later adopted by

Caboodle Corporate as examples for other franchisees

to use.

G.     That the Plaintiff has manipulated franchisees to

attack Caboodle Corporate.  The Plaintiff has

repeatedly explained to the Defendant the genesis of

the Unity Team and his role as an elected

representative of the Unity Team.  The Plaintiff has

never taken unilateral action or acted without the

prior consent of the Unity Team.  The Plaintiff has no

control over the Unity Team and has never

orchestrated an "email action."

16.     On June 15, 2007, during a conference call open to all Caboodle franchisees, the

Defendant repeated his false statements regarding the Plaintiff including *inter alia*: that the

Plaintiff's store is an "utter failure" and the worst in the chain; that the Plaintiff and his fellow

Unity Team elected representatives failed to explain the dire financial straits many Caboodle

franchisees are in, were unprofessional and unprepared for their meeting with the Defendant,

and are "terrible messengers"; that the Plaintiff and one of his attorneys threatened to sue

Caboodle and had accused the Defendant of destroying evidence; that the Plaintiff was

twisting the Defendant's words.

8

17.    The Defendant's statements are defamatory *per se* because they suggest that the Plaintiff is dishonest with business associates by *inter alia*: calling meetings under false pretenses; misrepresenting his authority to speak on behalf of other business associates; agreeing to hire advertising professionals, when the Defendant knew that the Plaintiff was not authorized to make such a commitment, and did not make such a commitment; conducting himself in a manner inconsistent with his responsibilities to the Unity Team (manipulating the group for the purpose of a hostile takeover); and being unable to successfully operate a Caboodle store, all the while knowing full well that the Plaintiffs sales were intentionally kept low and the reasons for those actions (i.e., Plaintiff's unwillingness to harm his reputation in the Chicago business community by selling the Defendant's substandard products as well as serious family issues to name but two reasons).

18.    Prior to filing this lawsuit, the Plaintiff requested directly and through an attorney that the Defendant publish a retraction and pointed the Defendant to his own e-mails showing that he knew that his assertions were demonstrably false.  The Defendant has declined this opportunity to correct his defamatory misstatements.

19.    As a proximate result of the foregoing unprivileged defamatory statements by the Defendant, statements which go beyond mere opinion by suggesting facts were available to support the assertions that the Plaintiff was and is dishonest in his business dealings with the Defendant and the Unity Team, imputed an inability to perform his responsibilities as one of the three elected representatives of the Unity Team, as well as prejudicing third parties regarding the Plaintiff's ability to act as a ethical leader, the Plaintiff has suffered injuries,

9

including injuries to his reputation as an ethical businessman and member of the bar.

20.     Furthermore, given the nature of the defamatory publication, Plaintiff has suffered humiliation in front of his colleagues, and the rest of the community, which has social, political, and financial ramifications for him.  The foregoing false and defamatory statements were made by Defendant with knowledge of their falsity, with the intent to cause the Unity Team and withdraw its support of Plaintiff and to breakup the Unity Team through distrust of its leaders and did these things with actual malice, so as to justify an award of punitive damages.

**WHEREFORE**, the Plaintiff, MICHAEL L. BLUMENTHAL,  prays for judgment against the Defendant, LUCIAN DANIEL WENCEL, and for damages in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, and for exemplary and punitive damages in an amount which will serve to punish the Defendant and deter him from similar conduct, plus costs and such other and further relief as this Honorable  Court deems fair, equitable and just.

**Respectfully submitted,**

**MICHAEL L. BLUMENTHAL, Plaintiff**

By:
**His Attorney**

**DAVID A. HARLEY, ESQ.**
**ATTORNEY FOR PLAINTIFF**
**875 N MICHIGAN AVE, SUITE 3100**
**CHICAGO, IL 60611**
**(312)416-0882**
**ATTORNEY NO. 6244536**

10

including injuries to his reputation as an ethical businessman and member of the bar.

20.     Furthermore, given the nature of the defamatory publication, Plaintiff has suffered humiliation in front of his colleagues, and the rest of the community, which has social, political, and financial ramifications for him.  The foregoing false and defamatory statements were made by Defendant with knowledge of their falsity, with the intent to cause the Unity Team and withdraw its support of Plaintiff and to breakup the Unity Team through distrust of its leaders and did these things with actual malice, so as to justify an award of punitive damages.

**WHEREFORE**, the Plaintiff, MICHAEL L. BLUMENTHAL,  prays for judgment against the Defendant, LUCIAN DANIEL WENCEL, and for damages in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, and for exemplary and punitive damages in an amount which will serve to punish the Defendant and deter him from similar conduct, plus costs and such other and further relief as this Honorable  Court deems fair, equitable and just.

**Respectfully submitted,**

**MICHAEL L. BLUMENTHAL, Plaintiff**

By: _David A. Harley_
His Attorney

DAVID A. HARLEY, ESQ.
ATTORNEY FOR PLAINTIFF
875 N MICHIGAN AVE, SUITE 3100
CHICAGO, IL 60611
(312)416-0882
ATTORNEY NO. 6244536

10

Affidavit of Service of Summons                            (Rev. 3/15/07) CCG 0074

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHAEL L. BLUMENTHAL

v.

LUCIAN DANIEL WENCEL

No. 07 L 6543

### AFFIDAVIT OF SERVICE OF SUMMONS OUTSIDE COOK COUNTY

State of California

County of Santa Clara    } ss:

Jon M. Garliepp, Jr. _____ on oath states:

I am over 21 years of age and not a party to this case.  I served the summons and a copy of the complaint upon defendant as follows:

☒ (a) on defendant Lucien Daniel Wencel _____, by leaving a copy of the summons and of the complaint with the defendant personally on September 27th , 2007 , at the hour of 6:45p m. at Starbucks - 624 Blossom Hill Road, Los Gatos , California , County of Santa Clara .

☐ (b) on defendant _____ on (date) _____, _____, at the hour of _____ m., by leaving a copy of the summons and of the complaint at _____ _____, County of _____, the defendant's usual place of abode with _____, a person of the defendant's family or a person residing there, of the age of 13 years or upwards, who, to the best of my knowledge is _____ years of age, ☐ Male ☐ Female and described by me as follows:

_____
_____
_____

and informing that person of the content of the summons, and also by sending on (date)_____, _____, a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode.

(c) on defendant corporation _____, by leaving a copy of the summons and of the complaint with _____, (name)

_____, of the corporation (registered agent) (officer) (agent)

on _____, _____, at the hour of _____ m. at _____

_____, County of _____.

_____
Signature of Affiant

Atty. No.: 6244536

Name: DAVID A. HARLEY, ESQ.

Atty. for: Plaintiff

Address: 77 W. Washington Street #1720

City/State/Zip: Chicago, IL 60602

Telephone: (312) 372-3566

Signed and sworn to before me October 23 , 2007

_____

```
"OFFICIAL SEAL"
CHRISTINE A. MURO
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 04/28/10
```

DOROTHY B⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ UNTY, ILLINOIS

— EXHIBIT "B" —

FIRM I.D.#01292

DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

2007 DEC -3 PM 4:23

FILED-14

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| MICHAEL L. BLUMENTHAL, an individual, | ) ) ) | |
| Plaintiff, | ) ) | No.  07 L 6543 |
| v. | ) ) | |
| LUCIAN DANIEL WENCEL, an individual | ) ) | |
| Defendant. | ) ) | |

### AMENDED COMPLAINT AT LAW

**NOW COMES** Michael L. Blumenthal ("Plaintiff"), by and through his attorney, David A. Harley, and against Lucian Daniel Wencel ("Defendant") and for his claim of defamation against Defendant states as follows:

### Count I – Defamation Per Se

1.      This is a defamation action brought on behalf of Plaintiff and against the Defendant to remedy and recover damages sustained as a result of false and unprivileged statements made by the Defendant.

2.      The Plaintiff is an attorney licensed to practice in Illinois, and former owner of a Caboodle Cartridge franchise in the  Chicago's Loop area.

3.      Defendant is President and majority shareholder of Caboodle Licensing Corporation and resides in Los Gatos, California.

4.      In late April and May of 2007, a group comprised of the majority of Caboodle's



franchisees formed the "Unity Team" (i.e., a franchisee association comprised exclusively of Caboodle franchisees) to address issues that were inhibiting or prohibiting the majority of franchisees from being successful.  Among the chief problems facing the franchisees were Caboodle Licensing Corporation's (herein "Caboodle Corporate") constantly changing mandates, lack of responsiveness to franchisee concerns and its open hostility towards many franchisees.

5.      The Unity Team elected three representatives to discuss these problems with Defendant Wencel, Mr. Blumenthal was selected as one of the representatives.

6.      In mid-May 2007, at Defendant's request,  Plaintiff contacted the Defendant to arrange for a face to face meeting to discuss ways to help Caboodle.

7.      The Plaintiff informed the Defendant that he had amassed a large amount of data from the franchisees to discuss with Caboodle Corporate and that he may  be bringing associates with him to that meeting, and that the purpose of that meeting was to discuss the problems plaguing franchisees and offer solutions to those problems.

8.      The Defendant agreed to meet with the Plaintiff and his associates over the course of two days, specifically,  May 31, 2007 and June 1, 2007.

9.      The Plaintiff specifically suggested that the Defendant make two days available because of the breadth of topics requiring discussion and defendant's anticipated reaction to these topics.

10.     The Plaintiff, his associates, Dr. James Gariti and Mr. Peter Bower, the Defendant, and Marc Jacobs (a Caboodle Corporation employee) met on May 31, 2007 and June 1, 2007

2

and discussed the issues the Unity Team had decided were among the most important issues affecting all franchisees.

11.     The Defendant's attacks on the Plaintiff's character, honesty, business acumen began almost immediately.  Subsequent to these meetings, the Defendant attacked the Plaintiff via e-mail, accusing the Plaintiff of *inter alia*:

      A.     Surprising him by showing up with other franchisees.

      B.     Not discussing the alleged "sole" issue Defendant has agreed to discuss.

      C.     Ignoring one of the Defendant's employees by continuing to take photos of Defendant's store after being asked to stop.

      D.     Organizing "a virtual attack" on Caboodle Corporate through e-mail and the Unity Team.

      E.     Running a "Caboodle store [that] is a disaster," despite knowing that the Plaintiff is intentionally not seeking customers because of past and current problems with product received from Caboodle Corporate.  Defendant made these statements knowing that the Plaintiff had been plagued with family and employee health issues since May of 2006.

      F.     Organizing the Unity Team to further Plaintiff's goals of a hostile takeover.

      G.     Not even knowing vendor names and other acts of gross incompetence. Defendant made this statement shortly after receiving a written list from the Plaintiff of vendor names and contact information.

3

H.    "[S]pen[ding] most of the (sic) time with Caboodle fighting with his

partner/store manager Bill Stout."

I.    Lying to the Defendant.

J.    Having poorly designed or manufactured marketing material.  The

Defendant stated that he had seen the Plaintiff's marketing materials and

that they were "not good."  This statement was made by the Defendant

who was fully aware that the Plaintiff was using the marketing materials

disseminated by the Defendant.

K.    Having threatened meritless legal action based on Plaintiff's

misrepresentations of the Defendant.  Specifically, the Defendant accused

Plaintiff of sending letters threatening legal action that contained, "spins

and misrepresentations portraying me (defendant) as a 'boogey man' bent

on hurting others;"

L.    Had threatened to sue Caboodle, when in fact the Plaintiff had threatened

to sue only the Defendant, and only if he did not issue a statement

correcting or withdrawing his defamatory statements.

Each of the foregoing assertions by the Defendant were, and remain, false.

12.    On May 29, 2007, in an e-mail to Mr. Blumenthal, the Defendant wrote regarding

the upcoming two (2) day meeting:

I hope to discuss the issues that you are bringing (you were not too
specific on these) and also to discuss the future plans for the
Chicago Loop project (your store)...You have expressed that you
spoke to a number of stores and want to tell me their about (sic)

4

concerns.

13.     Plaintiff immediately responded to that statement via email, which read, in

pertinent part:

> ...I hope you will keep an open mind and consider carefully the
> information I or others may bring up for discussion with you. We
> are all on the same team and we all want the same thing...."

14.     The foregoing statement shows that the Defendant knew prior to the meeting

that Plaintiff was coming to discuss issues other than his store and that he was not coming

alone.  Also during the Plaintiff's phone calls to set up and confirm these meeting, Plaintiff

mentioned that he would be bringing others with him to the meeting to discuss "the issues."

15.     Nevertheless, the Defendant wrote in a June 3, 2007, e-mail that was sent to the

Plaintiff and others that:

> The subject of Mr. Mike Blumenthal (sic) franchise in the Chicago
> loop was not discussed although this was the item on the agenda
> when Mike told Daniel that he would come for a one on one visit.

16.     On June 12, 2007, Defendant repeated his false utterance regarding the

scheduling and purpose of the meeting when he sent a mass e-mail to every Caboodle

franchisee which stated:

> I met with you and two other gentleman at our Santa Clara office.
> Although it was totally unscheduled and under false pretenses,
> (sic) I decided to spend full (sic) 15 hours on talking about the
> issues.

17.     Other misrepresentations of fact include statements suggesting that Mr.

Blumenthal agreed to, "search for a marketing professional or agency to hire.  The Unity Team

will be responsible for hiring, negotiating the payments and securing monies for such hire."

5

18.    At no time did the Plaintiff or either of the other Unity Team representatives offer to hire and pay for marketing professionals on behalf of the Unity Team.

19.    The Defendant on June 11, 2007 wrote to a third party:

> We are facing a difficult time. The company seems to be under a virtual attack by Mike Blumenthal. He has no experience running this business and his Caboodle store is a disaster. He has organized a group that seems to be manipulated by him to serve his goals with (sic) I suspect is a hostile takeover. Mike has lied to me, then send (sic) insulting and derogatory mail and acted in a most arrogant and aggressive way. Do you believe that Mike cares about the vendors or even knows their names. His average monthly sales are under thousand dollars and he spent most of the (sic) time with Caboodle fighting with his partner/store manager Bill Stout. Did you ever see the marketing materials that he produced? Id (sic) did. Believe me it (sic) was not good... I also believe that somebody is trying, through intimidation, fear and artificial crisis making, (sic) take over the company. As a new person in the chain you might have harder time than others to judge (sic) who is trying to do good in here and who is not. I took my time to write to you this letter because I sense that Mike has manipulated you along with others. He orchestrated today (sic) email (sic) action.

20.    As stated above, the false statements regarding the Plaintiff include:

A.    That the Plaintiff's store is a disaster. Defendant has

been made repeatedly aware of the fact that Plaintiff

is not actively selling. In fact, on June 13, 2007, after

uttering the defamatory statements regarding

Plaintiff's store performance, Defendant sent the

Plaintiff another e-mail asking him when he planned,

"to start the operation," referring to Plaintiff's store.

B.    That the Plaintiff is attempting a hostile takeover of

6

Caboodle, via "intimidation, fear and artificial crisis making." The Plaintiff has never tried to force the Defendant out of the company, nor has he ever advanced any position not approved by the Unity Team. The Unity Team has never taken a position to engage in a takeover of Caboodle Corporate, but rather to change the rules imposed on them by Caboodle Corporate so that they may be more successful.

C.    That Plaintiff lied to the Defendant. Other than the statements addressed in this Complaint, the Plaintiff is unaware of what "lies" the Defendant is referring to. Given the location of this statement, surrounded by other "facts," this statement by the Defendant could reasonably be construed to be a statement of fact, not opinion.

D.    Plaintiff does not care about the vendors or know who they are. On May 31, 2007, the Plaintiff provided the Defendant with a letter requesting the addition of twelve vendors to the Caboodle Corporate's approved vendor list. That list provided names,

addresses and phone numbers, so clearly the Plaintiff

knows and cares about who the vendors are.  In fact,

the Plaintiff's concern over the vendors is one of the

reasons he delayed opening his store.

E.     That Plaintiff has spent most of his time with

Caboodle fighting with his store manager/partner

Bill Stout.  While the Plaintiff employed Bill Stout for

a period of time, Bill Stout quit in mid-2006, and since

that time the Plaintiff has spoken to Mr. Stout only on

rare occasions. On those few occasions the

conversations have always been cordial.  The Plaintiff

has in fact repeatedly informed Caboodle Corporate

that Bill Stout no longer works for the Plaintiff and

asked that his name be removed from all

correspondence with Caboodle Corporate.  Caboodle

Corporate failed to comply with even these simple

requests.

F.     That the Plaintiff created marketing materials that

were not good.  The only marketing materials made

by the Plaintiff were either based on Caboodle

Corporate templates, or were later adopted by

8

Caboodle Corporate as examples for other franchisees to use.

G.   That the Plaintiff has manipulated franchisees to attack Caboodle Corporate. The Plaintiff has repeatedly explained to the Defendant the genesis of the Unity Team and his role as an elected representative of the Unity Team. The Plaintiff has never taken unilateral action or acted without the prior consent of the Unity Team. The Plaintiff has no control over the Unity Team and has never orchestrated an "email action."

21.   On June 15, 2007, during a conference call open to all Caboodle franchisees, the Defendant repeated his false statements regarding the Plaintiff including *inter alia*:

A.   That the Plaintiff's store is an "utter failure" and the worst in the chain.

B.   That the Plaintiff and his fellow Unity Team elected representatives failed to explain the dire financial straits many Caboodle franchisees are in, were unprofessional and unprepared for their meeting with the Defendant, and are "terrible messengers."

C.   That the Plaintiff and one of his attorneys threatened to sue Caboodle and had accused the Defendant of destroying evidence.

D.   That the Plaintiff was twisting the Defendant's words.

9

22.    The Defendant's statements are defamatory *per se* because they suggest that the Plaintiff is dishonest with business associates by *inter alia*:

    A.    Calling meetings under false pretenses.

    B.    Misrepresenting his authority to speak on behalf of other business associates.

    C.    Agreeing to hire advertising professionals, when the Defendant knew that the Plaintiff was not authorized to make such a commitment, and did not make such a commitment.

    D.    Conducting himself in a manner inconsistent with his responsibilities to the Unity Team (manipulating the group for the purpose of a hostile takeover).

    E.    Being unable to successfully operate a Caboodle store, all the while knowing full well that the Plaintiffs sales were intentionally kept low and the reasons for those actions (i.e., Plaintiff's unwillingness to harm his reputation in the Chicago business community by selling the Defendant's substandard products as well as serious family issues to name but two reasons).

23.    Prior to filing this lawsuit, the Plaintiff requested directly and through an attorney that the Defendant publish a retraction.

24.    The Plaintiff pointed the Defendant to his own e-mails showing that he knew that his assertions were demonstrably false.

25.    The Defendant has declined this opportunity to correct his defamatory misstatements.

26.    The Defendant's statements defame the Plaintiff in that they were designed to prejudice others, against the Plaintiff, by suggesting the existence of facts showing that the Plaintiff:

      A.    Was and is dishonest in his business dealings with the Defendant and the Unity Team.

      B.    Lacked the ability to perform his responsibilities as one of the three elected representatives of the Unity Team

      C.    The Plaintiff lacked the ability to act as a ethical leader.

27.    As a proximate result of the foregoing unprivileged defamatory statements by the Defendant; statements which go beyond mere opinion by suggesting facts were available to support the Defendant's assertions; the Plaintiff has suffered injuries, including injuries to his reputation as an ethical businessman and member of the bar.

28.    Furthermore, given the nature of the defamatory publication, Plaintiff has suffered humiliation in front of his colleagues, and the rest of the community, which has social, political, and financial ramifications for him.  The foregoing false and defamatory statements were made by Defendant with knowledge of their falsity, with the intent to cause the Unity Team and withdraw its support of Plaintiff and to breakup the Unity Team through distrust of its leaders.  The Defendant did these things with actual malice, so as to justify an award of punitive damages.

11

**WHEREFORE**, the Plaintiff, MICHAEL L. BLUMENTHAL, prays for judgment against the Defendant, LUCIAN DANIEL WENCEL, and for damages in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, and for exemplary and punitive damages in an amount which will serve to punish the Defendant and deter him from similar conduct, plus costs and such other and further relief as this Honorable Court deems fair, equitable and just.

Respectfully submitted,

MICHAEL L. BLUMENTHAL, Plaintiff

By: _____
His Attorney

DAVID A. HARLEY, ESQ.
ATTORNEY FOR PLAINTIFF
77 WEST WASHINGTON, #1720
CHICAGO, IL 60602
(312)372-3566
ATTORNEY NO. 6244536

12